**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Howard Johnson International, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> IMH, LLC, a Texas Limited Liability Company; MANPREET SINGH, an individual; ASHISH PATEL, an individual; and HARPREET SINGH, an individual, <br><br> Defendants. | Civil Action No. 14- <br><br> **VERIFIED COMPLAINT** |

Plaintiff Howard Johnson International, Inc., by its attorneys, LeClairRyan, complaining of defendants IMH, LLC, Manpreet Singh, Ashish Patel, and Harpreet Singh, says:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Howard Johnson International, Inc. ("HJI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2. Defendant IMH, LLC ("IMH"), on information and belief, is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 1919 North Loop West, Beaumont, Texas 77702.

HJI 14361-69935-02
23839.1279

3. Defendant Manpreet Singh, on information and belief, is a citizen of the State of Texas, having an address at 2615 I-10 East, Beaumont, Texas 77702.

4. Defendant Ashish Patel, on information and belief, is a citizen of the State of Texas, having an address at 1919 North Loop West, Beaumont, Texas 77702.

5. Inder Shoker, on information and belief, is a citizen of the State of Texas, having an address at 17618 Belwood Park Lane, Houston, Texas 77433.

6. Defendant Harpreet Singh, on information and belief, is a citizen of the State of Texas, having an address at 11319 Pampas Pass, Houston, Texas, 77433.

7. Upon information and belief, Manpreet Singh, Ashish Patel, Inder Shoker, and Harpreet Singh are the only constituent members of IMH.

8. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over IMH by virtue of, among other things, section 17.6.3 of the January 24, 2007 license agreement by and between IMH and HJI (the "License Agreement"), described in more detail below, pursuant to which IMH has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

11. This Court has personal jurisdiction over Manpreet Singh, Ashish Patel, and Harpreet Singh by virtue of, among other things, the terms of a guaranty (the "Guaranty")

2

described in more detail below, pursuant to which Manpreet Singh, Ashish Patel, and Harpreet Singh acknowledged that they were personally bound by Section 17 of the License Agreement.

12. Venue is proper in this District pursuant to section 17.6.3 of the License Agreement, inasmuch as that provision contains an express waiver by IMH of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Howard Johnson® Marks

13. HJI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

14. HJI owns and has the exclusive right to license the use of the service mark HOWARD JOHNSON® and various related trade names and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Howard Johnson® Marks"), as well as the distinctive HOWARD JOHNSON® System, which provides guest lodging services to the public under the HOWARD JOHNSON® name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

15. HJI or its predecessors first used the HOWARD JOHNSON® mark in connection with guest lodging services in 1954 and the Howard Johnson® Marks are in full force and effect. Certain of the registered Howard Johnson® Marks are incontestable pursuant to 15 U.S.C. § 1065.

16. HJI has given notice to the public of the registration of the Howard Johnson® Marks as provided in 15 U.S.C. § 1111.

17. HJI uses or has used the words "Howard Johnson," "Howard Johnson Plaza-Hotels," "Hojo Express," and "HoJo Inn," among others, as abbreviations of its brand name.

18. Through its franchise system, HJI markets, promotes, and provides services to its guest lodging licensees throughout the United States. In order to identify the origin of their guest lodging services, HJI allows its licensees to utilize the Howard Johnson® Marks and to promote the Howard Johnson brand name.

19. HJI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Howard Johnson® Marks as distinctly designating HJI guest lodging services as originating with HJI.

20. The value of the goodwill developed in the Howard Johnson® Marks does not admit of precise monetary calculation, but because HJI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of HJI's goodwill exceeds hundreds of millions of dollars.

21. The Howard Johnson® Marks are indisputably among the most famous in the United States.

**The Agreements Between The Parties**

22. On or about January 24, 2007, HJI entered into the License Agreement with IMH for the operation of a 42-room Howard Johnson® guest lodging facility located at 2615 I-10 East, Beaumont, Texas, Site No. 14361-69935-02 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

23. Pursuant to section 5 of the License Agreement, IMH was obligated to operate a Howard Johnson® guest lodging facility for a term of fifteen (15) years, during which time IMH

4

was permitted to use the Howard Johnson® Marks in association with the operation and use of the Facility as part of HJI's franchise system.

24. Pursuant to section 7 and Schedule C of the License Agreement, IMH was required to make certain periodic payments to HJI for royalties, marketing contributions, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

25. Pursuant to section 7.3 of the License Agreement, IMH agreed that interest is payable "on any past due amount payable to [HJI] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

26. Pursuant to section 3.8 of the License Agreement, IMH was required to disclose, among other things, the amount of gross room revenue earned by IMH at the Facility for purposes of establishing the amount of royalties and other Recurring Fees due to HJI.

27. Pursuant to section 3.8 of the License Agreement, IMH agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, IMH agreed to allow HJI to examine, audit, and make copies of the entries in these books, records, and accounts.

28. Pursuant to section 11.2 of the License Agreement, HJI could terminate the License Agreement, with notice to IMH, for various reasons, including IMH's (a) failure to pay any amount due HJI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from HJI specifying one or more defaults under the License Agreement, and/or (c) receipt

of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

29.     Pursuant to section 12.1 of the License Agreement, IMH agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to HJI in accordance with a formula specified in the License Agreement.

30.     Section 13 of the License Agreement specified IMH's obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Howard Johnson® Marks.

31.     Pursuant to section 17.4 of the License Agreement, IMH agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

32.     On or about January 24, 2007, HJI entered into a Satellite Connectivity Services Addendum (the "Satellite Addendum") with IMH. A true copy of the Satellite Addendum is attached hereto as Exhibit B.

33.     Pursuant to section 13(c) of the Satellite Addendum, IMH agreed that in the vent of a termination of the Satellite Addendum, including by virtue of termination of the License Agreement, it would pay Satellite Addendum Liquidated Damages to HJI of $2,500.00 within 10 days following the date of termination.

34.     Effective as of the date of the License Agreement, Manpreet Singh, Ashish Patel, and Harpreet Singh provided HJI with a Guaranty of IMH's obligations under the License Agreement. A true copy of the Guaranty is attached hereto as Exhibit C.

35. Pursuant to the terms of the terms of the Guaranty, Manpreet Singh, Ashish Patel, and Harpreet Singh agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause [IMH] to perform, each unpaid or unperformed obligation of [IMH] under the [License] Agreement."

36. Pursuant to the terms of the Guaranty, Manpreet Singh, Ashish Patel, and Harpreet Singh agreed to pay the costs, including reasonable attorneys' fees, incurred by HJI in enforcing its rights or remedies under the Guaranty or License Agreement.

## The Defendant's Defaults and Termination

37. IMH has repeatedly failed to meet its financial obligations under the License Agreement.

38. By letter dated August 20, 2013, a true copy of which is attached hereto as Exhibit D, HJI advised IMH that (a) it was in breach of the License Agreement because it owed HJI approximately $139,059.71 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination.

39. By letter dated September 20, 2013, a true copy of which is attached as Exhibit E, HJI terminated the License Agreement, effective September 20, 2013, and advised IMH that (a) it must de-identify the Facility within 10 days of the date of termination, (b) it was required to pay to HJI as liquidated damages for premature termination of the License Agreement the sum of $84,000.00 as required under the License Agreement, and (c) demand was made for all outstanding Recurring Fees through the date of termination.

40. The termination of the License Agreement precludes IMH from any further use of the Howard Johnson® Marks in or around the Facility.

41. The termination of the License Agreement precludes IMH from any further use of the Howard Johnson® Marks to induce the traveling public to use the Facility in any way.

42. Since the termination of the License Agreement, IMH has continued to use the Howard Johnson® Marks to induce the traveling public to rent guest rooms at the Facility.

43. Since the termination of the License Agreement, IMH has used the Howard Johnson® Marks without authorization to rent rooms through, among other things, failure to remove Howard Johnson® signage.

44. IMH has continued to misuse the Howard Johnson® Marks despite receiving notification from HJI to cease and desist from the misuse of the Howard Johnson® Marks.

## FIRST COUNT

45. HJI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 44 of the Verified Complaint.

46. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

47. IMH marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Howard Johnson® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

48. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

49. The acts of IMH in marketing, promoting, and renting rooms at the Facility, through and with the Howard Johnson® Marks, constitute:

      (a) a false designation of origin;

      (b) a false and misleading description of fact; and

      (c) a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of IMH's Facility with HJI, and to cause confusion, or to cause mistake, or deception, to the effect that HJI sponsors or approves of the guest lodging services that IMH provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

50. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

51. IMH's use of the Howard Johnson® Marks in connection with goods and services at the Facility, after the Howard Johnson® Marks became famous, caused and will continue to

cause dilution and disparagement of the distinctive quality of the Howard Johnson® Marks, and lessened and will continue to lessen the capacity of the Howard Johnson® Marks to identify and distinguish the goods and services of HJI, all in violation of Section 43(c) of the Lanham Act.

52. IMH's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

53. IMH's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on HJI.

54. HJI has no adequate remedy at law.

55. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), HJI demands judgment against IMH:

(a) Preliminarily and permanently restraining and enjoining IMH, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Howard Johnson® Marks; and

(b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

56. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 55 of the Verified Complaint.

57. Pursuant to sections 3.8 and 4.8 of the License Agreement, IMH agreed to allow HJI to examine, audit, and make copies of IMH's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

58. IMH has engaged in acts and practices, as described, which amount to infringement of the Howard Johnson® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

59. As a result, IMH owes restitution and the disgorgement of profits, in an amount unknown to HJI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from IMH.

**WHEREFORE**, HJI demands judgment ordering that IMH account to HJI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Howard Johnson® Marks.

## THIRD COUNT

60. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 59 of the Verified Complaint.

61. On September 20, 2013, HJI terminated the License Agreement, effective September 20, 2013, due to IMH's repeated failure to meet its financial obligations under the License Agreement.

62. Section 12.1 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, IMH shall pay liquidated damages to HJI within 30 days of termination.

63. Section 13(c) of the Satellite Addendum provides that, in the event of a termination of the Satellite Addendum, including by virtue of termination of the License Agreement, IMH shall pay Satellite Addendum Liquidated Damages to HJI in the amount of $2,500.00 within 10 days following the date of termination.

64. As a result of the termination of the License Agreement, IMH is obligated to pay HJI liquidated damages in the amount of $86,500.00, as calculated pursuant to section 12.1 of the License Agreement and section 13(c) of the Satellite Addendum.

65. Notwithstanding HJI's demand for payment, IMH has failed to pay HJI the liquidated damages as required in section 12.1 of the License Agreement and section 13(c) of the Satellite Addendum.

66. HJI has been damaged by IMH's failure to pay liquidated damages.

**WHEREFORE**, HJI demands judgment against IMH for liquidated damages in the amount of $86,500.00, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

67. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Verified Complaint.

68. By virtue of the premature termination of the License Agreement, HJI sustained a loss of future revenue over the remainder of the 15-year term of the License Agreement.

69. If the Court determines that IMH is not liable to pay HJI liquidated damages as required by section 12.1 of the License Agreement then, in the alternative, IMH is liable to HJI for actual damages for the premature termination of the License Agreement and Satellite Addendum.

70. HJI has been damaged by IMH's breach of its obligation to operate a Howard Johnson® guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, HJI demands judgment against IMH for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

### FIFTH COUNT

71. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Verified Complaint.

72. Pursuant to section 7 and Schedule C of the License Agreement, IMH was obligated to remit Recurring Fees to HJI.

73. Despite its obligation to do so, IMH failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $177,560.77.

74. IMH's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged HJI.

**WHEREFORE**, HJI demands judgment against IMH for the Recurring Fees due and owing under the License Agreement, in the current amount of $177,560.77, together with interest, attorneys' fees, and costs of suit.

### SIXTH COUNT

75. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 74 of the Verified Complaint.

76. At the time of the termination of the License Agreement, IMH was obligated to pay HJI Recurring Fees.

77. Despite its obligation to do so, IMH failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $177,560.77.

78. In addition, IMH benefited from its wrongful use of the Howard Johnson® Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to HJI in return for that benefit.

79. IMH's failure to compensate HJI constitutes unjust enrichment and has damaged HJI.

**WHEREFORE**, HJI demands judgment against IMH for the Recurring Fees due and owing under the License Agreement, in the current amount of $177,560.77, and all royalties and other Recurring Fees that should be paid to compensate HJI for the period during which IMH misused the Howard Johnson® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

### SEVENTH COUNT

80. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 79 of the Verified Complaint.

81. Pursuant to the terms of the Guaranty, Manpreet Singh, Ashish Patel, and Harpreet Singh agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of IMH under the License Agreement.

82. Despite their obligation to do so, Manpreet Singh, Ashish Patel, and Harpreet Singh have failed to make any payments or perform or cause IMH to perform each obligation required under the License Agreement.

83. Pursuant to the Guaranty, Manpreet Singh, Ashish Patel, and Harpreet Singh are liable to HJI for IMH's liquidated damages in the amount of $86,500.00, or actual damages in an amount to be determined at trial, and IMH's Recurring Fees due and owing under the License Agreement, in the current amount of $177,560.77, and for those additional Recurring Fees attributable to the period during which IMH has misused the Howard Johnson® Marks.

**WHEREFORE**, HJI demands judgment against Manpreet Singh, Ashish Patel, and Harpreet Singh for damages in the amount of:

(a) All liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit; and

(b) All profits, royalties, and other Recurring Fees that should be paid to compensate HJI for the period during which IMH misused the Howard Johnson® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

## EIGHTH COUNT

84. HJI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 83 of the Verified Complaint.

85. On September 20, 2013, HJI terminated the License Agreement due to IMH's repeated failure to meet its financial obligations under the License Agreement.

86. Section 13.2 of the License Agreement provides that, when the License Agreement is terminated, HJI has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not

located at the Facility, that [IMH has] not removed or obliterated within five days after termination."

87.  IMH continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Howard Johnson® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

88.  IMH's unauthorized use of the Howard Johnson® Marks has inflicted and continues to inflict irreparable harm on HJI.

**WHEREFORE**, HJI demands judgment declaring that HJI, or its authorized agent, has the right, without prior notice to IMH, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Howard Johnson® Marks.

**LeClairRyan**
Attorneys for Plaintiff,
Howard Johnson International, Inc.

By: _____
Bryan P. Couch

Dated: 9/18/14

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

      I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Howard Johnson International, Inc.

By: _____
      Bryan P. Couch

Dated: 9/16/14

## VERIFICATION

STATE OF NEW JERSEY   )
                     ) ss:
COUNTY OF MORRIS     )

Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

I am Senior Director of Contracts Compliance for Howard Johnson International, Inc. ("HJI"), which is plaintiff in this action.

I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of HJI, and/or information available through employees of HJI.

*[signature]*
SUZANNE FENIMORE

Sworn and subscribed to before
me this 18 day of July, 2014

*[signature]*
NOTARY PUBLIC
CLAUDIA N. BUDRIS
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 2314696
MY COMMISSION EXPIRES MAY 15, 2019